815 F.2d 705
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jack Edward ROBEY, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 85-1470.
 United States Court of Appeals, Sixth Circuit.
 March 25, 1987.
 
 Before JONES and RYAN, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 Petitioner appeals the denial of his 28 U.S.C. Sec. 2255 motion to vacate his sentence or to provide an evidentiary hearing to explore his allegations that his plea bargain was unconstitutionally procured. We affirm.
 
 
 2
 Robey was charged in two separate indictments with one count of aiding and abetting and theft of an interstate shipment of goods in violation of 18 U.S.C. Secs. 2 and 659, one count of receiving a stolen motor vehicle and aiding and abetting, in violation of 18 U.S.C. Secs. 2 and 2313, and one count of possession of stolen property and aiding and abetting in violation of 18 U.S.C. Secs. 2 and 659. Robey and his counsel made a plea agreement with the government under Fed.R.Crim.P. 11 by which petitioner agreed to plead guilty to the first named offense, theft of an interstate shipment and aiding and abetting, in return for the dismissal of the other two charges. The plea agreement expressly declared that there was no agreement for a maximum sentence less than the statutory limit of 10 years.
 
 
 3
 Robey's guilty plea was offered on January 11, 1983, and on March 31, 1983, he was sentenced to five years' imprisonment. He moved to vacate the sentence on October 29, 1984.
 
 
 4
 The essential thrust of Robey's claim is that he was persuaded to enter into the plea agreement by the improper inducements of agents of the FBI and an Assistant United States Attorney, and the improper advice of his court-appointed attorney.
 
 
 5
 Robey alleges that he was approached by two FBI agents in late 1981 asking that he become an informant. The agents gave Robey no Miranda[1] warnings and urged him not to contact his attorney because to do so would "present a problem." The agents interrogated Robey extensively about his own involvement in criminal activities without warnings or counsel present, and when Robey asked that counsel be present, they told him that if counsel became involved, "no deal could be made."
 
 
 6
 The agents entered into a long-term relationship with Robey, during which the agents drank "beer and spirits with him; coerced him to exclude his attorney from the investigation; and induced incriminating statements from him without issuing the constitutionally required 'Miranda' warnings."[2] This relationship was premised upon the agents' assurances that in return for Robey's cooperation, the agents would arrange for a light sentence for offenses Robey had committed and with which he would be charged. The "light sentence" was variously set at 3 or 4 years.
 
 
 7
 Robey also alleges that his plea bargain included a promise by an Assistant United States Attorney of a four-year cap on the sentence Robey would receive following his guilty plea--a promise Robey claims the Assistant United States Attorney later denied making. Robey further represents that his court-appointed attorney convinced him to enter into a plea bargain which placed no cap on the sentence that would be imposed.
 
 
 8
 The maximum term for the offense to which Robey pled guilty is ten years. When Robey appeared in the district court to enter his negotiated plea of guilty he was accompanied by his appointed counsel, and the government was represented by the same Assistant United States Attorney who, according to Robey's allegations, promised him a "real break in court" and later denied having made such a promise. The following is a portion of the considerably more extensive colloquy between the court and the petitioner concerning the voluntariness of the petitioner's guilty plea:
 
 
 9
 THE COURT: Are you pleading guilty to that Count because you are guilty of it?
 
 
 10
 THE DEFENDANT: Yes, I am.
 
 
 11
 THE COURT: Other than this, has anyone promised you anything in return for your plea of guilty.
 
 
 12
 THE DEFENDANT: For the ten years, no.
 
 
 13
 THE COURT: Has anyone threatened you in any way to have you plead guilty?
 
 
 14
 THE DEFENDANT: No.
 
 
 15
 THE COURT: Is it no?
 
 
 16
 THE DEFENDANT: No, Your Honor.
 
 
 17
 THE COURT: Then you offer that plea realizing the full consequences of that plea you may be required to serve a term of imprisonment of ten years and/or pay a fine of $10,000 or any part of $10,000?
 
 
 18
 [ASSISTANT U.S. ATTORNEY]: Your Honor, it's $5,000.
 
 
 19
 THE COURT: Five thousand dollars. Knowing of those, do you wish to plead guilty?
 
 
 20
 THE DEFENDANT: Yes, Your Honor.
 
 
 21
 THE COURT: All right. The plea is guilty.
 
 
 22
 [ASSISTANT U.S. ATTORNEY]: Your Honor, can I just interject a couple of questions?
 
 
 23
 First of all, I'd ask the Court to inquire of Mr. Robey if he realizes he has a right to an attorney throughout these entire proceedings; but he gives up that right by pleading guilty?
 
 
 24
 THE COURT: Do you know you are entitled to the assistance of counsel?
 
 
 25
 If you don't have money to pay counsel, the Court will appoint counsel?
 
 
 26
 THE DEFENDANT: Yeah. The Court appointed Mr. Wilhelm.
 
 
 27
 [ASSISTANT U.S. ATTORNEY]: Does he realize he has a right to the attorney throughout these proceedings?
 
 
 28
 THE DEFENDANT: Yes, sir. I do realize that.
 
 
 29
 [ASSISTANT U.S. ATTORNEY]: Secondly, Your Honor, I'd like the Court to inquire if the plea is a result of negotiations between Mr. Wilhelm and myself? And, if he's satisfied with the representation of Mr. Wilhelm?
 
 
 30
 THE COURT: Do you realize that the conference between your counsel, Mr. Wilhelm, and the U.S. Attorney's Office is the result of that conference that you are pleading guilty?THE DEFENDANT: Yes, Your Honor.
 
 
 31
 Robey relies upon 28 U.S.C. Sec. 2255, which provides in pertinent part:
 
 
 32
 "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a proper hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."
 
 
 33
 Robey also relies upon Machibroda v. United States, 368 U.S. 487, 496 (1962), in which the Court stated that the district court was required to grant a hearing if the allegations, "while improbable, cannot at this juncture be said to be incredible."
 
 
 34
 In Machibroda, the facts, if true, clearly showed the prisoner's entitlement to relief. In recommending denial of the Sec. 2255 motion in this case, the magistrate relied upon Parker v. North Carolina, 397 U.S. 790 (1970). In Parker, the prisoner, a 15-year-old boy at the time, pled guilty to a serious crime after having made a constitutionally dubious confession to the police. The North Carolina courts determined that the confession had been a "free and voluntary act." Id. at 795. The Court observed:
 
 
 35
 "We would in any event be reluctant to question the judgment of the state courts in this respect; but we need not evaluate the voluntariness of petitioner's confession since even if the confession should have been found involuntary, we cannot believe that the alleged conduct of the police during the interrogation period was of such a nature or had such enduring effect as to make involuntary a plea of guilty entered over a month later. Parker soon had food and water, the lack of counsel was immediately remedied, and there was ample opportunity to consider the significance of the alleged promises. After the allegedly coercive interrogation, there were no threats, misrepresentations, promises, or other improper acts by the State. Parker had the advice of retained counsel and of his family for the month before he pleaded. The connection, if any, between Parker's confession and his plea of guilty had 'become so attenuated as to dissipate the taint.' Nardone v. United States, 308 US 338, 341, 84 L Ed 307, 312, 60 S.Ct. 266 (1939); Wong Sun v. United States, 371 US 471, 491, 9 L Ed 2d 441, 457, 83 S Ct 407 (1963). As far as this record reveals, the guilty plea was Parker's free and voluntary act, the product of his own choice, just as he affirmed it was when the plea was entered in open court."
 
 
 36
 Id. at 796.
 
 
 37
 Robey would have us focus upon the events that preceded his plea of guilty, some of which, he claims, amounted to constitutional violations, and, in their totality, violated the validity of his negotiated plea of guilty. The government, on the other hand, argues that a voluntary guilty plea, freely and individually made, is valid and final, notwithstanding the constitutionality of events which preceded, and even precipitated, the plea.
 
 
 38
 Parker held that even constitutional violations preceding a guilty plea are wiped out by the plea if the plea is voluntary. In Mabry v. Johnson, 467 U.S. 504 (1984), the Supreme Court took pains to explain why that is so. In Mabry the defendant accepted a plea bargain and then was told that the prosecutor had made a mistake and was withdrawing the plea offer. Subsequently, a new plea bargain was entered into that was much less advantageous to the defendant. The Court determined that, until accepted by the court, a plea bargain is a mere executory agreement, and is not specifically enforceable:
 
 
 39
 "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence--because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange. It is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired. In Brady v. United States, 397 US 742, 25 L Ed 2d 747, 90 S Ct 1463 (1970), we stated the applicable standard:
 
 
 40
 ' "[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." ' Id., at 755, ...
 
 
 41
 "Thus, only when it develops that the defendant was not fairly apprised of its consequences can his plea be challenged under the Due Process Clause. Santobello v. New York, 404 US 257, 30 L Ed 2d 427, 92 S Ct 495 (1971), illustrates the point. We began by acknowledging that the conditions for a valid plea 'presuppose fairness in securing agreement between an accused and a prosecutor.... The plea must, of course, be voluntary and knowing and if it was induced by promises, the essence of those promises must in some way be made known.' Id., at 261-262, 30 L Ed 2d 427, 92 S Ct 495. It follows that when the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand: '[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.' Id., at 262, 30 L Ed 2d 427, 92 S Ct 495."
 
 
 42
 Id. at 508-09 (footnotes omitted). Thus, after Mabry, while it is still possible to challenge a guilty plea on the ground that it is involuntary, no plea is involuntary by reason of the manner in which the plea agreement was made if the plea bargain is agreed to in open court by a defendant who fully comprehends the terms of the plea bargain, assents to it, and then offers a free, voluntary, and understanding guilty plea.
 
 
 43
 In this case, it cannot be said that Robey did not comprehend the terms of the plea he entered into in open court; indeed Robey does not make that claim. If the evidence against him had been unconstitutionally obtained, Robey's counsel could have brought this out at trial, assuming Robey had been willing to take that risk. Furthermore, if Robey's plea in fact rested upon intimidation or coercion, he had an opportunity to expose that fact when he appeared in the district court to enter his plea. Instead, he had his day in court and gave no indication whatever that his plea was compelled by anything except his unwillingness to face trial on all the charges the government could potentially bring against him. Under the teaching of Parker and Mabry, the district court is not required to provide a second day in court so that a prisoner can bring allegations of government misconduct that he concealed the first time around.
 
 
 44
 The denial of Robey's Sec. 2255 motion is AFFIRMED.
 
 
 
 [1]
 Miranda v. Arizona, 384 U.S. 436 (1966)
 
 
 [2]
 Petitioner's Brief at 3